**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KOTCHEN & LOW LLP<br><br>                    *Plaintiff*,<br><br>       v.<br><br>PRECISION DISCOVERY, INC., and<br>JERRY BARBANEL<br>                    *Defendants*. | Case No. 1:16-cv-224-GK |

**DEFENDANTS' MOTION
TO STAY PROCEEDINGS AND COMPEL ARBITRATION
OR IN THE ALTERNATIVE, TO DISMISS**

Pursuant to 9 U.S.C. §§ 3 & 4, Defendants Precision Discovery, Inc. ("Precision") and Jerry Barbanel hereby move to stay these proceedings and compel arbitration. Defendants file this Motion in lieu of an answer to the Complaint. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1012-13 (E.D. Cal. 2011); *Intravascular Research Ltd. v. Endosonics Corp.*, 994 F. Supp. 564, 567 n.3 (D. Del. 1998); *In re Barney's, Inc.*, 206 B.R. 336, 340-41 (S.D.N.Y. Bankr. 1997); *Creative Title Mktg., Inc. v. SICS Int'l, S.r.L.*, 922 F. Supp. 1534, 1537 n.1 (S.D. Fla. 1996); *cf. Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 83 (2000) (noting without concern that defendants filed motion to compel arbitration in lieu of answer). However, if the Court declines to stay these proceedings and compel arbitration, Defendants move in the alternative to dismiss the Complaint for the reasons stated below. *See* Fed. R. Civ. P. 12. Counsel for Defendants has conferred with Plaintiff's counsel who does not agree that this matter is arbitrable and therefore opposes this Motion.

## INTRODUCTION

Kotchen & Low LLP ("K&L"), a law firm, hired Precision to perform electronic discovery services for it in a lawsuit in the Northern District of Georgia. The parties' written agreement provided that "[a]ny controversy or claim arising out of, or relating to services provided by Precision Discovery" would be resolved by "binding arbitration." The agreement further provided that "[a]ny issue concerning the extent to which any dispute is subject to arbitration . . . shall be governed by the Federal Arbitration Act and *resolved by the arbitrators*." (Emphasis added).

Pursuant to these provisions, when a dispute arose as to the fees owed by K&L to Precision, Precision commenced an arbitration against K&L on September 23, 2014. K&L responded in the arbitral forum and asserted counterclaims. K&L later asked the arbitrators to rule that Precision's claims (and one of K&L's counterclaims) were not arbitrable.

After that issue had been fully briefed in the arbitral forum, K&L refused to pay its share of the arbitrators' fees, leading the arbitrators to suspend the arbitration. K&L now tries to litigate this identical dispute before this Court.

Because the dispute is clearly arbitrable—and, indeed, has already been before the arbitrators for 18 months—this case must be stayed, and K&L directed to arbitrate, pursuant to the Federal Arbitration Act, 9 U.S.C. §4. That K&L now argues that its claims are not arbitrable is of no moment, because the parties' agreement explicitly assigns that determination to the arbitrators, not to the courts.

K&L's attempt at forum shopping should be rejected, and this case should return to the arbitrators, before whom it has been pending for a year and a half.

**FACTUAL BACKGROUND**

    A.    **Precision Discovery's Services**

Precision is a consulting company offering a comprehensive array of discovery related services, including computer forensics, electronic discovery and managed review. (Chan Dec. ¶ 2).[1] Specifically, Precision's computer forensic services are often required when clients need an expert to review the contents of computer hard drives. When a case involves the examination of many hard drives, backup tapes and/or other electronic media consisting of large quantities of data, enterprise scale hardware and software including electronic discovery processing software is needed to analyze the data. (Chan Dec. ¶ 3).

    B.    **The Agreement Between K&L and Precision**

K&L, a law firm, represents the plaintiffs in a putative class action lawsuit pending in the United States District Court for the Northern District of Georgia known as *In re Delta/AirTran First Bag Fee Antitrust Litigation*, 09-md-2089 (the "Delta Litigation"). Delta Airlines is a defendant in the Delta Litigation. (Complaint ¶ 11; Cohen Dec., Ex. 1).[2]

During the course of the Delta Litigation, the United States District Court for the Northern District of Georgia, Atlanta Division (the "Delta Court") has made multiple findings that Delta engaged in discovery-related misconduct. On November 19, 2012, the Delta Court issued an Order (the "November 19 Order") in which it directed the plaintiffs in the Delta Litigation to retain a discovery expert to perform an investigation of Delta's discovery practices as outlined in that Order and issue a report as to its findings. (Complaint ¶ 13; Cohen Dec., Ex. 1).

---

[1] "Chan Dec." refers to the Declaration of Kinny Chan, dated March 4, 2016, which is submitted herewith in support of this motion.
[2] "Cohen Dec." refers to the Declaration of Steven J. Cohen, Esq. dated April 5, 2016.

K&L retained Precision to perform the services outlined in the November 19 Order. Precision and K&L entered into a written agreement (the "Retainer Agreement") obligating K&L to pay Precision. (Cohen Dec., Ex. 3).

The Retainer Agreement includes a broad arbitration clause which states, in relevant part:

> Any controversy or claim arising out of, or relating to services provided by Precision Discovery and covered by this letter for Counsel [K&L] or at its request (including any such matters involving any parent, subsidiary, affiliate, successor in interest, of Counsel or of Precision Discovery) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter.

(Cohen Dec., Ex. 3, p. 4).

The Retainer Agreement selected the International Institute for Conflict Prevention and Resolution ("CPR") as the arbitrators, and expressly granted to CPR the power to resolve any disputes as to the scope of the parties' arbitration agreement:

> Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, **shall be governed by the Federal Arbitration Act and resolved by the arbitrators.**

(Cohen Dec., Ex. 3, p. 6) (emphasis added). Furthermore, the Retainer Agreement expressly incorporates the CPR's own rules:

> The arbitration will be conducted in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for the Dispute Resolution ("Rules") as in effect on the date of the engagement letter, or such other rules and procedures as the parties may designate by mutual agreement.

(Cohen Dec., Ex. 3, p. 6). In turn, Rule 8 of the CPR Rules states in part:

4

> 8.1 The Tribunal shall have the power to hear and determine challenges to its jurisdiction, **including any objections with respect to the existence, scope or validity of the arbitration agreement.**
>
> 8.2 The Tribunal shall have the power to determine the existence, validity or scope of the contract of which an arbitration clause forms a part. For the purposes of challenges to the jurisdiction of the Tribunal, the arbitration clause shall be considered as separable from any contract of which it forms a part.

(Cohen Dec., Ex. 4) (emphasis added).

### C. The Parties' Fee Dispute Is Submitted to Arbitration

Precision worked on the project in the Delta Litigation from November 2012 to May 2013 and submitted its expert report to the Court on May 20, 2013. (Cohen Dec., Ex. 1; Complaint ¶ 34). A few days before the report was to be submitted, a dispute arose as to the payment of Precision's fees, which totaled $4,899,501.39.

On September 25, 2013, the Delta Court entered an Order (the "September 25, 2013 Order") in which it awarded Precision $2,449,750.70, representing 50% of the amount owed to Precision in connection with the services it provided to K&L in the Delta Litigation. The Court also awarded K&L not less than $500,000. K&L did not appeal or otherwise object to the September 25, 2013 Order. (Cohen Dec., Ex. 5).

In September 2014, Precision commenced an Arbitration against K&L before the CPR in order to recover the remainder of its fees. (Cohen Dec., ¶ 7). K&L filed its Answer and Counterclaims before CPR on November 10, 2014 (Cohen Dec., ¶ 8). After unsuccessful attempts to settle the dispute, Precision filed its Reply to Counterclaims on December 14, 2014. (Cohen Dec., ¶ 9).

The parties jointly designated the three arbitrators, and agreed on dates for discovery, motion practice, and the hearing before the arbitrators (scheduled for December 2016). On February 22, 2016, K&L filed with CPR a "Motion to Dismiss for Non-Arbitrability" in accordance with the Scheduling Order entered by the Panel. (Cohen Dec., ¶10). In this motion, K&L argued that there were actually two agreements between it and Precision, that one of those agreements did not contain an arbitration clause, and that the pending dispute supposedly arises under that second agreement. But K&L has not produced *any* signed document embodying that supposed "second agreement," either to the CPR or to this Court; Exhibit C to K&L's Complaint is merely an email in which K&L approves a price estimate. The signed contract between the parties is the Retainer Agreement which, as noted above, contains a broad arbitration clause and an agreement that disputes as to the scope of that clause are to be resolved by the arbitrators.[3]

Accordingly, on March 4, 2016, Precision filed its opposition to K&L's motion to dismiss with CPR. (Cohen Dec., ¶ 11).

The next day, March 5, 2016, CPR announced that it was suspending the arbitration because K&L had not paid its share of CPR's arbitral fees. (Cohen Dec., ¶ 12). Precision has paid all of its share of the arbitrators' fees. (Cohen Dec. ¶ 14).

On March 15, 2016, CPR notified the parties that the Panel would reinstate the arbitration if the parties paid half of the estimated fee for the arbitration by March 25, 2016, in the amount of $54,300, and the remaining $54,300, no later than 90 days before the date of the hearing. (Cohen Dec., ¶ 13). On March 25, 2016, Precision paid the entire $54,300 to the Panel and agreed to pay

---

[3] K&L claims that Precision has two "separate divisions" and that its Retainer Agreement is only with one of those divisions. (Complaint ¶¶ 7, 14, 17) In fact, Precision has only one division, which executed the Retainer Agreement but, for the reasons stated herein, that dispute is for the arbitrators, not this Court. (Chan Dec. ¶ 5 ("Precision's employees work together as one unified company.")).

the remaining $54,300 by 90 days before the hearing date. (Cohen Dec., ¶ 14). By Scheduling Order dated March 28, 2016, the Panel reinstated the arbitration and scheduled additional briefing on K&L's motion to dismiss for non-arbitrability by April 16, 2016. (Cohen Dec., ¶ 15).

Meanwhile, on February 10, 2016, K&L filed the instant action with this Court, asserting claims almost identical to the Counterclaims it asserted in the arbitration. For the reasons set forth below, this case must be stayed under Section 4 of the FAA, and K&L must be directed to arbitrate its claims before CPR.

## ARGUMENT

### I. THIS DISPUTE IS SUBJECT TO THE PARTIES' AGREEMENT TO ARBITRATE.

The Retainer Agreement expressly provides that "[a]ny controversy or claim arising out of, or relating to services provided by Precision Discovery" must be resolved by "binding arbitration." (Cohen Dec., Ex. 3, p. 4). In the event of a disagreement as whether a dispute is within the scope of that arbitration clause, the Retainer Agreement further provides that such disputes concerning "the extent to which any dispute is subject to arbitration" "shall be governed by the Federal Arbitration Act and resolved by the arbitrators." (*Id.*, Ex. 3, p. 6).

The FAA "declare[s] a national policy favoring arbitration of claims that parties contract to settle in that manner." *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 130 (D.D.C. 2013). Any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* Section 3 of the FAA provides that, if a suit filed in any federal court is subject to an arbitration agreement, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Similarly, Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order

7

directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Indeed, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Ordinarily, "the question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability*' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise[.]'" *Skrynnikov v. Fed. Nat' Mortg. Ass'n*, 943 F. Supp. 2d 172, 176 (D.D.C. 2013) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis added)). *Accord, First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Here, the language of the Retainer Agreement reflects the "clear and unmistakable" intent of the parties that the Panel decide the question of arbitrability.

### A. The Retainer Agreement Expressly Provides for the Arbitration Panel to Decide Issues of Arbitrability

The plain language of the Retainer Agreement reflects the "clear and unmistakable" intent of the parties to refer issues of arbitrability to the Panel because it expressly provides that the Panel would hear disputes concerning whether "any dispute was subject to arbitration."

Where a provision unambiguously delegates the issue of arbitrability to the arbitrators, the "clear and unmistakable" intent identified by the Supreme Court in *AT&T Techns.* and *First Options* is demonstrated. *See, e.g.*, *Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 306 F. Supp. 2d 346, 356 (S.D.N.Y. 2004) (finding clear and unmistakable intent to arbitrate where arbitration provision provided that "[t]he arbitrators . . . will have exclusive jurisdiction over the entire matter in dispute, *including any question as to its arbitrability*." (emphasis in original)).

### B. The Retainer Agreement References the CPR Rules, Which Expressly Delegate the Issue of Arbitrability to the Panel

While the express language of the Retainer Agreement demonstrates that the parties intended issues of arbitrability to be determined by the arbitrators, the reference in the Retainer Agreement to the CPR Rules is additional evidence of the parties' intent, because the CPR rules clearly delegate the question of arbitrability to the Panel. The Retainer Agreement expressly states that the arbitration will be conducted in accordance with the rules of the CPR (Cohen Dec., Ex. 3, p. 6); and those Rules expressly provide that the arbitral tribunal "shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Cohen Dec., Ex. 4, p. 15). Indeed, K&L itself recognized that the issue of arbitrability is one for the arbitrators, by filing a "Motion to Dismiss for Non-Arbitrability" before the CPR.

Decisions in this District have consistently held that there is "clear and unmistakable" evidence that the parties agreed to arbitrate the question of arbitrability where, as here, the parties' contract requires arbitration pursuant to a set of rules that explicitly call for the question of arbitrability to be resolved by the arbitrators. *See, e.g.*, *Grynberg v. BP P.L.C.,* 585 F. Supp. 2d 50, 54–55 (D.D.C. 2008) (finding that "[a]mple case law supports" the position that incorporation of the AAA Rules by reference constitutes "clear and unmistakable evidence" that the parties intended to submit the arbitrability determination to the arbitrator); *Diwan v. EMP Glob. LLC*, 841 F. Supp. 2d 246, 251 (D.D.C. 2012), *app. dismissed*, 2012 WL 556277 (D.C. Cir. Feb. 6, 2012) (holding that parties agreed to arbitrate the issue of arbitrability where relevant agreement cited to the UNCITRAL rules which provide that substantive arbitrability is to be determined by the arbitrators). Courts have even expressly addressed a reference to the CPR Rules. *See Contech Constr. Prods., Inc. v. Heierli*, 764 F. Supp. 2d 96, 109 (D.D.C. 2011) (holding that issue of

9

arbitrability was expressly reserved to arbitrator where relevant agreement referenced the CPR Rules which call for the arbitrator to decide arbitrability).

Because the parties clearly and unmistakably intended the CPR to decide issues of arbitrability, the Complaint must be stayed in favor of the Arbitration.

### C. Alternatively, Even if the Issue Were for this Court to Decide, This Case Must Be Arbitrated

The FAA unequivocally calls for this dispute to be arbitrated, broadly providing that: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Supreme Court has held that, in enacting the FAA, "Congress declared a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Accordingly, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91.

"A motion to compel arbitration is effectively 'a request for summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate[,]' and therefore such a motion is properly reviewed under the summary judgment standard of Rule 56(c) of the Federal Rules of Civil Procedure." *Skrynnikov*, 943 F. Supp. 2d at 175-76 (internal

10

citations omitted). "Under this standard, the party seeking to compel arbitration must first present 'evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 96 (D.D.C. 2013) "The burden then shifts to [the non-moving party] to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed.R.Civ.P. 56." *Id.* "The Court will compel arbitration if the pleadings and the evidence show that "'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.*

When presented with a motion to compel arbitration, a district court in this Circuit must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002).  To make such a determination, courts must engage in a two-part inquiry.  First, the court must decide whether the parties entered into a valid and enforceable arbitration agreement.  *Nur v. K.F.C. USA, Inc.*, 142 F.Supp.2d 48, 50-51 (D.D.C.2001).  Second, if the court finds that the parties did enter a valid arbitration agreement, the court must determine whether the arbitration agreement encompasses the claims raised in the complaint.  *Id.*  The application of this test confirms that the claims in the Complaint are subject to the arbitration clause.

### i. A Valid Agreement to Arbitrate Exists

The Retainer Agreement is a valid and enforceable agreement.  The Retainer Agreement was signed by K&L—a sophisticated class action law firm—after K&L reviewed and revised it. Under District of Columbia law, "'one who signs a contract has a duty to read it and is obligated according to its terms.'"  *Skrynnikov*, 943 F. Supp. 2d at 177 (*citing Curtis v. Gordon*, 980 A.2d 1238, 1244 (D.C. 2009)).  K&L's claims against Precision are therefore subject to the arbitration clause contained in the only agreement signed by the parties.

### ii. The Arbitration Clause Encompasses K&L's Claims Against Precision

Agreements, such as this one, that provide for the arbitration of all disputes "arising out of *or relating to*" the underlying agreement, are routinely held to be "broad" arbitration clauses for the purposes of determining their scope. *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) ("arising out of or relating to" is a "broad" arbitration clause); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (arising out of or related to clause is the "paradigm of a broad clause"); *Dowley v. Dewey Ballantine, LLP*, Civil Action No. 05-622 (EGS), 2006 WL 1102768, at *8 (D.D.C. Apr. 26, 2006) (holding that "arising out of" language was broad).

Thus, federal courts have distinguished clauses that call for the arbitration of disputes "arising out of or relating to" a contract from clauses which merely call for the arbitration of disputes *arising from* or *arising under* a contract, with the former being even broader than the latter. In *Dowley,* the court held that "arising out of" is the broadest of all the clauses, reaching "all disputes having their origin in the contract, whether or not they implicate interpretation or performance of the contract per se." 2006 WL 1102768, at *9. Thus:

> This Court finds that the language "arising under" is more restrictive [than] "arising out of," for "arising under" may denote disputes limited to the interpretation and performance of the contract itself. However, "arising out of" reaches all disputes having their origin in the contract, whether or not they implicate interpretation or performance of the contract per se. Therefore, if "arising under" constitutes a broad arbitration clause, "arising out of" constitutes even a broader arbitration clause that covers all claims that are germane to the subject matter of the contract.

*Id.* at *9.

A review of the actual claims in the Complaint confirms that this dispute is arbitrable under the broad language of the Arbitration Clause.

Although K&L argues that its contract claim does not arise out of the Retainer Agreement, but some other supposed contract, it has not (because it cannot) show to the Court any written contract between the parties other than the Retainer Agreement.  Moreover, the Retainer Agreement calls for the arbitration of "[a]ny controversy or claim arising out of or relating to services provided by Precision Discovery . . . ."

Likewise, K&L's fraud claim (Complaint ¶¶ 82-86) is equally subject to arbitration, because the language of the Retainer Agreement is broad enough to encompass tort claims "arising out of, or relating to services provided by Precision." *See, e.g.*, *Sheet Metal Workers' Int'l Ass'n v. United Transp. Union*, 767 F. Supp. 2d 161 (D.D.C. 2011) (arbitration clause which covered "any dispute or controversy arising out of or under this Agreement" encompassed tort and trademark claims); *Dowley,* 2006 WL 1102768 at *9 (arbitration clause covering claims "arising out of" agreement included fraud claims).

Similarly, K&L's claim under the Lanham Act (Complaint ¶¶ 87-91) must be arbitrated, because nothing in the FAA bars the arbitration of claims arising under federal statutes. *See, e.g.*, *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).[4]

### D. K&L Must Arbitrate Its Claim Against Barbanel

In another attempt to avoid its arbitration agreement, K&L has asserted its fraud claim (Complaint ¶¶ 82-86) against Jerry Barbanel, Precision's President and CEO (Complaint ¶ 8).

---

[4] K&L's fraud claim does not satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b), and its Lanham Act claim is also facially insufficient.  In the event this Court does not compel arbitration of those claims, Precision respectfully requests in the alternative that the Court dismiss these claims, and reserves the right to request that the Court allow it to submit supplemental briefing on these issues.

This claim must be arbitrated as well, for three reasons. First, the arbitration clause expressly encompasses claims against "any parent, subsidiary, [or] affiliate" of Precision. (Cohen Dec., Ex. 3, p. 4). The term "affiliate" encompasses Precision's individual officers. *See, e.g.*, *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826 (D.C. Cir. 1987).

Second, federal courts have consistently held that "employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997). *Accord, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (holding that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *8 (S.D. Fla. Mar. 26, 2003) *aff'd,* 90 Fed. App'x 383 (11th Cir. 2003) ("Employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.").

In *Campaniello,* the Second Circuit held that the plaintiff was required to arbitrate fraud claims it asserted against an officer of the company which was a signatory to an arbitration agreement between it and the plaintiff because the officer "uttered the alleged misrepresentations during negotiations" between the plaintiff and the officer's company. Because the plaintiff's claims against the officer "ar[ose] out of" his relationship with the company, those claims were "also subject to mandatory arbitration." 117 F.3d at 668-69. Here, the misrepresentations alleged to have been made by Barbanel were all made in his capacity as the President and CEO of Precision and in connection with Precision's engagement pursuant to the Retainer Agreement. As in *Campaniello,* Barbanel is entitled to the protections of the Retainer Agreement for that reason.

Finally, K&L should be required to arbitrate its dispute against Barbanel on the theory of equitable estoppel. "Courts in the District of Columbia Circuit have held that non-signatories to an arbitration agreement . . . may compel a signatory to the agreement to arbitrate a dispute pursuant to the doctrine of estoppel." *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 98-99 (D.D.C. 2014). "Under the doctrine of estoppel, a non-signatory can compel arbitration with a signatory 'when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed.'" *Id*.

### E. The Pendency of an Arbitral Proceeding Requires that this Action Be Stayed

For the reasons set forth above, the FAA requires that this case be stayed, and that K&L be compelled to arbitrate. But that result is doubly required in this case because there is already an arbitration pending between the parties before their chosen arbitral forum, the CPR.

Once an arbitration has commenced, the arbitrators, not the court, have jurisdiction over the dispute. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 899 (2d Cir. 2015). Only after the arbitration is concluded and the arbitrators render their Award do the courts again have jurisdiction under the FAA to confirm or vacate the award. *Id.* at 900-901; *see* 9 U.S.C. §§ 9, 10. But during the pendency of the arbitral proceedings, the courts must refrain from interfering. *Benihana*, 784 F.3d at 901-902; *In re Sussex*, 781 F.3d 1065, 1073 (9th Cir. 2015) (collecting cases). This rule serves the "congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 903 (D.C. Cir. 1998) (quoting *Prima Paint Corp.*, 388 U.S. at 404).

If K&L were correct in its argument that the claims in this case are not arbitrable, its remedy is to pursue the motion to dismiss it already filed before the arbitrators. But, the arbitration having

15

already commenced—with K&L's acquiescence and participation—K&L cannot seek relief in court until that arbitration is concluded.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant their motion to stay proceedings and to compel arbitration, or in the alternative dismiss the Complaint, and grant Defendants such other and further relief as the Court deems just and proper.

April 5, 2016                                          Respectfully submitted,

/s/ John R. Grimm
Charles T. Kimmett (Bar No. 463920)
ckimmett@hwglaw.com
John R. Grimm (Bar No. 1018892)
jgrimm@hwglaw.com
Harris, Wiltshire & Grannis LLP
1919 M Street, NW, The Eighth Floor
Washington, DC  20036
Telephone:  (202) 730-1300
Facsimile: (202) 730-1301

Steven J. Cohen (*pro hac vice*)
cohen@wmllp.com
Wachtel Missry LLP
885 Second Avenue
New York, New York 10017
Telephone: (212) 909-9500

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 5, 2016, the foregoing was filed with the Clerk of Court and served on all counsel of record electronically through the Court's CM/ECF system.


                                      /s/ John R. Grimm
                                      John R. Grimm