UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KOTCHEN AND LOW LLP, | : | |
| Plaintiff, | : | |
| v. | : | |
| PRECISION DISCOVERY, INC., | : | Civil Action No. 16-224 (GK) |
| and JERRY BARBANEL, | : | |
| Defendants, | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kotchen & Low LLP ("Plaintiff" or "K&L") and Defendants Precision Discovery, Inc. ("Precision") and Jerry Barbanel (together, "Defendants") are currently arbitrating Precision's claims for over $3 million in unpaid bills for electronic data processing, hosting, and related charges, costs and fees. Plaintiff K&L filed this action seeking declaratory judgment that Precision's arbitration claims are barred by the doctrines of res judicata and issue preclusion and that they are not subject to arbitration. Defendants have moved to stay proceedings before this Court in favor of ongoing arbitration.

This matter is presently before the Court on Defendant's Motion to Stay Proceedings and Compel Arbitration or in the Alternative to Dismiss ("Motion to Compel Arbitration") [Dkt. No.

18], Defendant's Motion to Stay Proceedings and Compel Arbitration
or in the Alternative to Dismiss the Amended Complaint ("Am. Motion
to Compel Arbitration") [Dkt. No. 21], Defendant's Motion to Stay
Rule 26 Obligations Pending Determination on Arbitrability ("Mot.
to Stay") [Dkt. No. 26], and Plaintiff's Motion for Rule 16
Scheduling Conference ("Pl.'s Mot.") [Dkt. No. 29].

Upon consideration of the Motions, Oppositions, and Replies,
the entire record herein, and for the reasons stated below,
Defendants' Motion to Compel Arbitration is **denied** as moot.
Defendants' Amended Motion to Compel Arbitration and Motion to
Stay is **granted in part and denied in part.** Defendant's Motion to
Stay is **denied** as moot, and Plaintiff's Motion is **denied.**

I.    BACKGROUND

A.    Factual Background

This dispute stems from a contractual agreement reached
between the parties in relation to a separate suit, In re
Delta/AirTran Baggage Fee Antitrust Litig., MDL 09-2089 (N.D. Ga.)
("Delta Litigation"). On November 19, 2012, the judge in the Delta
Litigation issued a decision finding discovery misconduct by
Delta, the defendant in that case. See In re Delta/AirTran Baggage
Fee Antitrust Litig., 09-md-2089, 2015 WL 4635729, at *5 (N.D. Ga.
August 3, 2015). As a remedy, the judge ordered plaintiff's

counsel, K&L, to retain a discovery expert to investigate Delta's misconduct, and for Delta to pay the expert. Id.

On November 25, 2012, K&L signed a retainer letter with Precision. Pl.'s Ex. G ("Retainer Agreement") [Dkt. No. 22-7]. The Retainer Agreement stated that Precision had been hired, "to perform computer forensic services in the matter of In Re Delta/AirTran Baggage Fee Antitrust Litigation, MDL 2089," and that "[Precision] will need to perform those procedures that [it] consider[s] necessary to express a professional conclusion." Id. at 1. The Retainer Agreement added that, "The scope of services may change during the course of this engagement."

The arbitration clause of the Retainer Agreement states that,

> Any controversy or claim arising out of, or relating to services provided by Precision Discovery and covered by this letter for Counsel or at its request (including any such matter involving any parent, subsidiary, affiliate, successor in interest, of Counsel or of Precision Discovery) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter.

> Retainer Agreement at 4.

In addition, the Retainer Agreement attached and incorporated by reference Dispute Resolution Procedures, which contained an additional arbitration clause. Id. at 6. The clause states that,

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("Rules") as in effect on the date of the engagement letter, or such other rules and procedures as the parties may designate by mutual agreement. . .

Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.

Retainer Agreement at 6.

In January 2013, Precision asked K&L for authorization to perform E-discovery services. Pl.'s Opp. to Defs.' Mot. to Stay Proceedings and Compel Arbitration, or to Dismiss at 5 ("Pl.'s Opp.") [Dkt. No. 22]. On January 4, 2013, Precision sent K&L a proposed E-discovery Statement of Work ("SOW"). Pl.'s Ex. E [Dkt. No. 22-5]. K&L never signed the SOW. Pl.'s Opp. at 6. Instead, K&L authorized Precision by email to proceed with a limited amount of E-discovery. Pl.'s Ex. B ¶¶ 5-7 ("Low Decl.") [Dkt. No. 22-2].

Between November 2012 and March 2013, Precision billed $797,481 for computer forensic services and $4,102,020 for E-discovery services. Pl.'s Opp. at 7; Pl.'s Ex. C [Dkt. No. 22-3]. On May 20, 2013, Precision "request[ed] the Court's assistance in

-4-

ordering Delta to. . . pay for the services rendered by Precision Discovery." Pl.'s Ex. K, ("Pixley Report") [DKt. No. 22-11].

On May 28, 2013, Delta requested a hearing on Precision's fees before the judge in the Delta Litigation. Pl.'s Opp. at 8. On July 24, 2013, the Delta Litigation court held a full-day evidentiary hearing. Id. In an Order dated September 25, 2013, the Delta Litigation court ruled that Precision's fees were not reasonable. Pl.'s Ex. P [Dkt. No. 22-16]. The court ordered Delta to reimburse $655,635 in fees advanced by plaintiff's counsel, and to pay Precision an additional $1,794,116 in fees. Id. at 38. Together, these amounts represented a 50 percent reduction in Precision's fees. Id.

In June 2013, Precision sent Delta a hard drive containing approximately 371,000 documents that had been collected by Precision for Delta's review. Low Decl. ¶ 16. In late 2013, one of Precision's Vice Presidents left Precision to start his own company, Pixley Forensics Group ("Pixley"). Id. at ¶ 13. Thereafter, K&L discontinued its use of Precision and retained Pixley as its expert witness. Id.

In December 2013, the Delta Litigation court ordered Precision to make all data, including the hard drive with 371,000 documents, available to Pixley. Pl.'s Opp. at 11. Instead of sending a hard drive to Pixley with the documents, Precision

provided Pixley with a password to an online database of approximately 8 million documents hosted by Precision, which included but did not identify the 371,000 documents. Id.

On May 21, 2014, Precision sent K&L an invoice for approximately $70,000 for hosting charges. Pl.'s Ex. T [Dkt. No. 22-20]. K&L refused to pay the invoice. Low Decl. ¶ 17. Precision now seeks to recover from K&L "under theories of unjust enrichment and quantum meruit for the $485,558 in fees incurred for the hosting and related services." Pl.'s Ex. D at 3 [Dkt. No. 22-4].

### B.   Procedural Background

On September 23, 2014, Precision commenced an arbitration against K&L to recover unpaid fees from K&L for services provided by Precision in connection with the November 9, 2012 Order in the Delta Litigation. Defendants' Notice of Supplemental Authority at 1 ("Arbitration Decision") [Dkt. Nos. 25, 25-1]. On November 10, 2014, K&L filed its Answer and Counterclaims with the arbitrators. Am. Mot. to Compel Arbitration at 6. On December 14, 2014, Precision filed its Reply with the arbitrators. Id.

On February 10, 2016 K&L filed a Complaint in this Court. [Dkt. No. 1]. On February 16, 2016, K&L filed a Motion to Dismiss the arbitration proceedings with the panel, claiming lack of arbitrability. Arbitration Decision at 1.

On April 5, 2016, Defendants filed a Motion to Stay and Compel Arbitration, or in the Alternative to Dismiss with this Court ("Motion to Compel Arbitration") [Dkt. No. 18]. On April 6, 2016, Plaintiff filed an Amended Complaint ("Am. Compl.") [Dkt. No. 19], which is the operative complaint.

On April 22, 2016, Plaintiff filed its Opposition to Defendant's Motion to Compel Arbitration. [Dkt. No. 20]. On April 25, 2016, Defendants filed a Motion to Stay and Compel Arbitration, or in the Alternative, to Dismiss the Amended Complaint ("Am. Motion to Compel Arbitration") [Dkt. No. 21]. On April 26, 2016, Plaintiff filed its Opposition to Defendant's Amended Motion to Compel Arbitration ("Pl.'s Opp.") [Dkt. No. 22]. On April 28, 2016, Defendants filed their Reply to the Motion to Compel Arbitration [Dkt. No. 23]. On May 6, 2016, Defendants filed their Reply to the Amended Motion to Compel Arbitration ("Def.'s Reply") [Dkt. No. 24].

On May 16, 2016, the Arbitration Panel ruled on K&L's Motion to Dismiss, finding that all of Precision's claims except those regarding the hosting charges were subject to arbitration. Arbitration Decision at 11. On May 17, 2016, Defendants filed a Notice of Supplemental Authority ("Arbitration Decision") [Dkt. Nos. 25, 25-1], attaching the panel's decision.

-7-

On May 24, 2016, Defendants filed a Motion to Stay Rule 26 Obligations Pending Determination on Arbitrability ("Mot. to Stay") [Dkt. No. 26]. Plaintiff filed its Opposition on May 30, 2016 [Dkt. No. 27] and Defendants filed their Reply on June 9, 2016 [Dkt. No. 28].

On August 23, 2016 Plaintiff filed a Motion for Rule 16 Scheduling Conference [Dkt. No. 29]. On September 1, 2016, Defendants filed their Opposition [Dkt. No. 30]. Plaintiff did not file a Reply.

## II.  STANDARD OF REVIEW

"The Supreme Court has set out 'the proper framework for deciding when disputes are arbitrable.'" Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp., 815 F.3d 834, 844 (D.C. Cir. 2016) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010)). "Under that framework, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Id. (emphasis in original).

A dispute over the breadth of an arbitration provision is "'generally for the courts to determine' but 'parties may agree to arbitrate questions of breadth' so long as they do so plainly." Id. (quoting Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp., 850 F.2d 756, 761 (D.C. Cir. 1988)).

III. ANALYSIS

   A. The Scope of the Retainer Agreement

      1. Precision's Computer Forensic Services Fee and E-Discovery Fee Claims

K&L does not dispute that the Retainer Agreement covers the computer forensic services provided by Precision. However, K&L argues that the E-discovery services provided by Precision were not covered by the Retainer Agreement and thus not subject to its arbitration provisions.

The language of the Retainer Agreement clearly shows that it extended to the E-discovery services provided by Precision. There are several provisions of the Retainer Agreement which make this clear.

For example, as noted above, the second paragraph of page one of the Agreement states that:

> We have been asked to perform computer forensic services in the matter of In Re Delta/AirTran Baggage Fee Antitrust Litigation, MDL 2089. If you desire a report, opinion or testimony on a matter, we will need to perform those procedures that we consider necessary to express a professional conclusion. The scope of services may change during the course of this engagement. We will discuss any variations with you prior to implementation.

Retainer Agreement at 1 (emphasis added).

The Retainer Agreement thus contemplated Precision providing a broad range of additional services beyond computer forensics which might become necessary to reach an expert opinion.

More explicitly, the section of the Retainer Agreement related to compensation provides that, "[p]ricing for our electronic discovery services will be provided at such time as they are requested by counsel." Retainer Agreement at 2-3.

### 2. Precision's Unjust Enrichment Hosting Fee Claims

In contrast, the Retainer Agreement does not include any mention of hosting fees. Furthermore, the hosting services provided by Precision occurred after K&L terminated Precision as its discovery expert in the Delta Litigation. Low Decl. ¶16; Pl.'s Opp. at 11.

In addition, the Court is also not convinced that Precision's hosting fee claims are sufficiently related to the court-ordered forensic services it provided in the Delta Litigation as to fall within the four corners of the Retainer Agreement. Therefore, the Retainer Agreement and its arbitration provisions do not apply to Precision's claims arising out of its unpaid hosting fees. Consequently, K&L may therefore pursue its $485,558 unjust enrichment claim related to Precision's hosting fees before this Court.

**B.   The   Arbitration   Clause   Mandates   Arbitration   of
Precision's   Claims   Arising   from   its   Unpaid   Computer
Forensic Services Fees and E-Discovery Fees**

**1.   The Retainer Agreement Language**

Precision's   Computer   Forensic   Services   Fee   and   E-Discovery
Fee  Claims  are  subject  to  arbitration  because  the  parties  expressed
their   clear   and   unmistakable   intention   to   have   the   arbitration
panel determine the scope of its own jurisdiction.[1] See Skrynnikov
v. Fed. Nat. Mortg. Ass'n, 943 F. Supp. 2d 172, 176 (D.D.C. 2013)
("the   question   whether   the   parties   have   submitted   a   particular
dispute  to  arbitration,  i.e.  the  'question  of  arbitrability'  is
'an  issue  for  judicial  determination  [u]nless  the  parties  clearly
and unmistakably provide otherwise[.]'")(quoting AT&T Techs., Inc.
v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

The   Retainer   Agreement   explicitly   states   that,   "any   issue
concerning   the   extent   to   which   any   dispute   is   subject   to
arbitration. . . . shall be governed by the Federal Arbitration Act
and resolved by the arbitrators." Retainer Agreement at 6. In this
case,  the  arbitration  panel  selected  by  both  parties  has  already

---

[1] The arbitration clause explicitly applies to claims against "any
parent, subsidiary [or] affiliate" of Precision. Def.'s Ex. 3 at
4  [Dkt.  No.  21-3].  As  President  and  CEO  of  Precision,  Jerry
Barbanel is an "affiliate" of Precision. See Pearce v. E.F. Hutton
Group, Inc., 828 F.2d 826 (D.C. Cir. 1987). Therefore, all claims
arising  out  of  factual  allegations  that  are  arbitrable  for
Precision are arbitrable for Barbanel.

determined that all of Precision's claims arising out of its unpaid fees, with the exception of the hosting fees, are subject to arbitration.

Even if there were any doubt that the arbitrability question was for the arbitration panel to decide, this Court would find that the computer forensic services fee and E-discovery fee claims are subject to arbitration. The plain language of the arbitration clauses of the Retainer Agreement dictate that all claims arising thereunder are subject to arbitration. Retainer agreement at 2-3, 6.

## 2. Presumption of Arbitrability

Under Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, which governs the arbitration provisions in the Retainer Agreement, (Retainer Agreement at 6), there is a "presumption of arbitrability," and a rule that all "[d]oubts should be resolved in favor of [arbitration]." The Supreme Court has held that, in enacting the FAA, "Congress declared a national policy favoring arbitration." Southland Corp. v. Keeting, 465 U.S. 1, 10 (1984).

Were there any doubt that the language of the Retainer Agreement mandates arbitration, such doubt would be resolved in favor of the arbitrability of Precision's claims arising out of its unpaid computer forensic services and E-discovery fees. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

24-25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").[2]

### C. Plaintiff's Breach of Confidentiality Claim

Defendants do not substantively dispute that Plaintiff's breach of confidentiality claim (Count II) is not arbitrable. As Defendant points out, the Retainer Agreement specifically says that claims based on Precision's confidentiality obligation are not arbitrable. Retainer Agreement at 4.

Instead, Defendant argues that Count II should be dismissed because it is barred by the express terms of the Retainer Agreement. Defendant is correct.

---

[2] K&L makes two additional arguments: 1) that Precision failed to satisfy a condition precedent to arbitration by failing to seek mediation; and 2) that Precision waived its right to arbitration by seeking payment of its fees in federal court.

Without holding that mediation was a condition precedent of arbitration, this Court finds that Precision's March 27, 2014 Mediation Notice Letter [Dkt. No. 22-21] would have satisfied such a condition.

This Court is also not persuaded by K&L's waiver argument. K&L argues that Precision waived its right to arbitration by seeking payment of its fees in the Delta Litigation. However, because neither Precision nor K&L were party to the Delta Litigation and because K&L's liability for Precision's fees was not at issue in that litigation, Precision's participation in a one day hearing for which it was summoned by that court did not cause it to waive its rights to arbitration.

-13-

The confidentiality restriction in the Retainer Agreement is lifted, "as may be required by law, regulation or judicial or administrative process." Retainer Agreement at 1. The testimony of Precision's officer which K&L now claims constituted a breach of confidentiality was given pursuant to a Court order that Precision's employees "shall appear and offer evidence. . . in support of the reasonableness of their fees and expenses." Pl.'s Ex. M [Dkt. No. 22-13]. Thus, Plaintiff's testimony was not subject to the confidentiality provisions of the Retainer Agreement and Plaintiff's breach of confidentiality claim shall be dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motions are **granted in part and denied in part**, and Plaintiff's Motion is **denied**, and it is hereby

**ORDERED,** that Defendants' Motion to Stay Proceedings and Compel Arbitration or in the Alternative to Dismiss [Dkt. No. 18] shall be **denied** as moot given the fact that the First Complaint has been dismissed; and it is further

**ORDERED,** that Defendants' Motion to Stay Rule 26 Obligations Pending Determination on Arbitrability [Dkt. No. 26] shall be **denied** as moot since the issue of arbitrability has been decided; and it is further

ORDERED, that Defendants' Motion to Stay Proceedings and Compel Arbitration or in the Alternative to Dismiss the Amended Complaint [Dkt. No. 21] is **granted in part and denied in part** in so far as the following; and it is further

ORDERED, that Precision's claims arising from its unpaid computer forensic services and E-discovery fees are arbitrable and are not properly before this Court; and it is further

ORDERED, that Precision's claims arising from its hosting fees are not arbitrable and are properly before this Court; and it is further

ORDERED, that Plaintiff's claim for Breach of Confidentiality shall be **dismissed**; and it is further

ORDERED, Plaintiff's Motion for Rule 16 Scheduling Conference is **granted**. The parties shall appear before this Court for a Status Conference pertaining to Plaintiff's remaining claims on **October 27, 2016, at 12:00 p.m.**

September 28, 2016

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF